## HEPBURN et al. *v.* COMMISSIONERS OF THE EXCHANGE AND BANKING COMPANY OF NEW ORLEANS, et al.

*An act of the legislature authorizing the reduction of the stock of a bank to the amount paid in at a certain period, accepted by the stock holders, will exonerate the latter from any liability beyond the amount of the reduced stock, as to creditors who have become so since the reduction.*

The date of a bank note is no evidence, even against the bank, at the period at which it be-came the property of the holder; nor can a subsequent holder claim to be vested with the rights of the first holder, so as to consider the debt due to him as dating from the period of the original issue.

Though the date of an ordinary written obligation to pay money is evidence of the date of the origin of the debt, the rule does not apply to bank notes.

Where the note of a bank is re-issued in the course of its daily business, the obligation of the bank is fixed by the re-issuing of the note; the date on its face is of no moment.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Grymes*, *Sigur* and *Bonford*, for the appellants. *L. Pierce*, for the com-missioners. *Livingston*, *Maybin*, *Roselius*, *L. Janin*, *S. L. Johnson*, *Benjamin* and *Micou*, for different stock holders. The judgment of the court was pro-nounced by

EUSTIS, C. J. In 1839, the legislature passed an act to relieve the banks of the State, which had incurred the forfeiture of their charters by a suspension of specie payment, from said forfeiture. In the act it is provided that such of the banks as have not their capital stock paid in, may suspend the payment of the stock until the 1st day of February, 1841, and that the amount actually paid in at that period shall be deemed the capital stock of said banks, and they are hereby restrained from doing business on any larger amount of capital un-der the rules prescribed by their charter. Act of the 14th March, 1839, s. 2.

The charter of the Exchange and Banking Company was adjudged to be forfeited by a judgment of the late court of the First Judicial District, on the 15th of March, 1842. The plaintiffs are holders of $34,710 of bank notes of this company, which came into their possession subsequent to January 1st, 1843, and the object of this suit is to make the original stock-holders, several of whom are made defendants, liable for the bank notes on which this action is brought.

It is admitted that the defendants have paid all the installments called in by the directors up to the time fixed by the act of 1839, to-wit: February 1st, 1841. Having thus contributed all they were bound to contribute to the capi-tal as reduced by the act of 1839, the question presented is, whether they are liable in the present case beyond that amount, by reason of their obligations re-sulting from their ownership of the stock. The district judge was of opinion that they were not so liable, and gave judgment for the defendants. The plaintiffs have appealed.

The argument of this cause has been very elaborately prepared on both sides, and we have come to a conclusion which confines the subject within a very narrow compass, under the view presented by the district judge.

The first point to be ascertained is, as to the precise rights of the plaintiffs as the holders of bank notes which they have acquired since the forfeiture of the charter in March, 1842.

It is admitted that the act of 1839 was accepted by the banks, and it is obvious that, as far as legislation and the consent of the bank can make that act binding and obligatory, it has become so to all its legal intents. It was held by the Supreme Court, in the case of *Millaudon* v. *The Carrollton Bank*, 3 Rob. 507, that the act of 1839 did not diminish any of the *original* liabilities of the stock holders, and that they still remained contingently liable for the full amount of their subscriptions; but, that for the purpose of banking, the capital stock as it stood reduced by that act was not to be changed. Although we have not been able to concur in this opinion of the Supreme Court as to the pricipal

question which it decided, yet, so far as the opinion asserts the principle that the original liability of the stock holders to the creditors at that time was not impaired by that act, we concur in it. But we cannot continue in its extent their liability to subsequent creditors, without denying the power of the legislature to reduce the capital of a bank, the bank itself consenting to the reduction. The capital of those institutions was frequently increased on their application, and we see no objection to its being diminished with their consent. The effect of the act of 1839, as limiting the capital of the banks, was considered in the case of *Purton et al.* v. *The Carrollton Bank*, 3 An. 31, and settled by the decision given.

Considering, therefore, the act of 1839 as fixing the amount of the capital of the bank to the amount paid in on the 1st February, 1841, as the defendants have paid their *quotas* up to that period, they are not liable to the creditors of the bank whose debts have been created since that period. Supposing them to remain under their original responsibility as stock holders to the creditors of the bank before the reduction of its capital, are the plaintiffs, by virtue of the bank notes which they hold, invested with the rights of such creditors.

A large proportion of these notes bear date in the year 1836, and it is contended by counsel that as to the origin of the debt itself the date is conclusive, and that there is no other mode of ascertaining when the notes were put in circulation except by referring to the dates. As the case is before us, the plaintiffs present themselves as the holders of the bank notes. Their dates are the only evidence of that of their origin; and the plaintiffs contend that the notes constitute a debt contracted by the bank in favor of the first holders, whose rights are vested in them.

By the third section of the act of 1839, the banks of New Orleans were bound to settle and pay the balances due each other every monday morning in gold and silver, and once a month were to publish a statement of their circulation, deposits, &c. The Exchange Bank continued its banking business until March, 1842, when it ceased to redeem its notes, and up to that time received and paid them out daily without memorandum of date or amount, or any notice being taken of the date of the re-issue. In pursuance of the act of 1839, the banks made weekly settlements up to March, 1842, in which the notes of each bank received by the others were returned to the bank of issue, and the balance ascertained and settled by the check of the settling clerk; the Exchange Bank accordingly received its own notes and paid them out without any alteration of dates.

However true it may be that in ordinary written obligations to pay money their date is evidence of the time of their origin, no authority has been shown which would justify its application to bank notes. They constituted the principal part of the currency at the time of the enactment of the laws concerning the banks of New Orleans.

Those laws were enacted under an emergency of great public embarrassment, in which the government of the State undertook to regulate the currency as a measure required by the necessity of the occasion. The very fact of the notes being currency excludes the conclusion of their date being material, and would defeat their uses as currency. No person would take a note as money if it were subject to the rules of pecuniary obligations, and subject like them to the laws of prescription. Indeed our Code has an express article ex-

HEPBURN
*v.*
COMMISSIONERS
OF EXCHANGE
BANK.

exempting bank notes from the operation of the prescription applicable to notes payable to order or to bearer. Article 3505.

Where the notes of a bank are re-issued in the course of its daily business, the obligation of the bank is fixed by the re-issuing of the note; the date on its face necessarily becomes a matter of no moment, and affords no index to the time of the origin of the obligation of the bank: and the legislation of 1839 and the action of the banks under it just noted, exclude any possible inference of the time of their issue of bank notes being deduced from their date.

It follows, therefore, that, the plaintiffs, having come into possession of the notes sued on subsequently to the 1st of January, 1843, there is no evidence of the notes being debts of the bank previous to the reduction of its capital under the law of 1839. That they were so originally the date imports, but once paid into bank after the reduction of the capital they were extinguished, and the obligation of the original stock holders could not be revived by their re-issue; the bank with its reduced capital being only bound by such re-issue.

These views we take to be in accordance with that in which the law considers bank notes according to the highest and best approved authorities. "Bank notes," says Lord Mansfield, in the case of *Miller* v. *Race*, 1 Burrow's Rep. 452, "are not goods, not securities or documents for debts, nor are they so esteemed, but are treated as money—as cash, in the ordinary course and transaction of business by the general sense of mankind, which gives them the credit and currency of money to all intents and purposes." *Keith* v. *Jones*, 9 Johnson, 120. *Judah* v. *Harris*, 19 Id. 145.

We therefore concur with the district judge in the opinion that, the stock holders who are defendants in this case are not liable to the plaintiffs; and, such being our opinion, it becomes unnecessary to notice any of the other points raised in the defence.                                          *Judgment affirmed.*