SIMON<br>v.<br>MILLER.

# H. W. PALFREY, Receiver of the Exchange and Banking Company, *v.* CORNELIUS PAULDING.

Although a bank charter contains no provision for its forfeiture in the event of a failure to pay specie; yet, where there was in force, at the date of the charter, a general law to the same effect, the forfeiture can, under that law, be enforced

The Exchange and Banking Company was one of the banks that had incurred the forfeiture of their charter, by the suspension of specie payments, and the act of 1839 was intended to apply to it.

The acts of the corporate officers of a corporation, are admissible evidence from which the fact of acceptance of a particular charter may be inferred. It is not indispensable to show a written instrument, or vote of acceptance, on the corporation books. It may be inferred from other facts, which demonstrate that it must have been accepted. *Rost*, J.

The stockholders of the Exchange and Banking Company are not personally bound for debts contracted by the bank, after the promulgation of the act of 1839. *Eustis*, C. J.

I am not satisfied that the act of 1839 was accepted by the bank in such a manner, as to bind creditors of the corporation. *Slidell*, J.

The power granted by the 1st section of 438th article of the Civil Code, is a power to be exercised under conditions. *Slidell*, J.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Bradford* and *Goold*, for plaintiff. *Hoffman* and *Ogden*, for defendant.

By the court : *(Preston,* J., declined to sit in this case.)

ROST, J. The defendant held thirty shares of the stock of the Exchange and Banking Company. The shares were of one hundred dollars, upon which fifty dollars have been paid. The corporation is insolvent, and its charter has been adjudged to be forfeited, at the suit of the State.

The plaintiff, who now administers the affairs of the corporation, as receiver, claims from the defendant twenty dollars per share, on the fifty dollars unpaid, alleging that such a contribution is necessary, on the part of all the solvent stockholders, to extinguish the outstanding liabilities of the company.

That portion of the answer which I deem material to the issue, is as follows : "Your respondent alleges, that the second section of the act of the 14th March, 1839,* mentioned in the plaintiff's petition, was not unconstitutional and void, but was a constitutional and valid law, and entirely exonerated him from all liability on account of stock in the said company, if any such liability existed at the time, which he denies.

" He further alleges, that the assets of the bank, then, far exceeded its liabilities, and it was solvent, enjoyed, for years after the law of 1839, good credit,

---

*The act of 1839 referred to, is entitled, An Act to relieve such of the banks of this State whose Charter may have been forfeited by a suspension of specie payments, from such forfeiture. Acts 1839, p. 66.

and its liabilities, at the time the forfeiture of the charter was declared, and especially those which it is pretended now exist, were contracted subsequently to the passage of said law of 1839, and upon its faith, and not upon the faith of the subscription for stock, annulled by that law; and the pretended creditors of the company, at this time, have no claim whatsoever, upon the stockholders whose subscriptions were so far annulled by law."

The act of 1839, referred to in the answer, is entitled, an act to relieve such of the banks of this State, whose charter may have been forfeited by a suspension of specie payments, from such forfeiture.

The first section reinstates all such banks, in all the powers, rights, and privileges, conferred on them by their respective charters, notwithstanding any forfeiture thereof.

The second section provides, that such of said banks as have not their stock paid in, may suspend the payment of said stock until the 1st day of February, 1841; and that the amount actually paid in at that period, shall be deemed the capital stock of said banks; and they are, in that case, restrained from doing business on any larger amount of capital, under the rules prescribed by their charters.

The third, and last, section, makes it the duty of all the banks to settle, and pay the balances due by them to each other, every Monday morning, in gold or silver; and to publish, on the first Monday of each month, in at least one of the newspapers of the city of New Orleans, a statement showing the gross amount of their circulation and deposits, and the amount of specie in their vaults.

The plaintiff's counsel concede, that if the defendant can avail himself of the dispositions of the law, the action will be defeated. But they insist that he can not, on two grounds: 1. Because the law was not intended by the Legislature to apply, and did not apply, to the Exchange and Banking Company. 2. That the defendant can not, under any circumstances, avail himself of its provisions, because it never was accepted by that corporation.

In support of the first ground, it is said that, by the 22d section of the charter of the Exchange and Banking Company, the penalty which it incurred, by the suspension of specie payments, was the liability to pay twelve per cent per annum interest to its creditors, on the amount of its obligations; that, as it is not provided, as is the case with some other bank charters, that the suspension shall work a forfeiture of its franchises, the Exchange and Banking Company was not one of the banks whose charter had been forfeited by the suspension of 1837, and to which, alone, the act of 1839 is applicable.

This argument rests upon the authority of the case of the State v. The Tombigbee Bank, 2 Stewart's Ala. Rep. That case, in the brief, is stated as follows: The Tombigbee Bank was chartered in the year 1817. After the passage of the act of incorporation, a general law was enacted by the Legislature, declaring that all bank charters should be held forfeited, by a suspension of specie payments. The bank in question suspended payment in specie, for the term of one year. On a *quo warranto* issued against the bank, it was held that the charter, containing no provision authorizing its forfeiture in case of a suspension of specie payments, such a suspension did not, under the charter, destroy its franchises; that the charter was a contract, and that the subsequent law, creating a new ground of forfeiture, was unconstitutional in its application to that bank.

This authority, considered with reference to our laws on the subject of corporations, is conclusive against the plaintiff, on this part of the case. It is manifest that, if the general law creating the forfeiture had been in force at the time

the charter was granted, the court would have veiwed it, as a part of the contract which they say the charter created, and the forfeiture would have been enforced. A general law, of the same description, was enacted by the Legislature of Louisiana, ten years before the date of the charter of the Exchange and Banking Company, and has been in force ever since. The second paragraph of art. 438, C. C., provides that corporations legally established, may be dissolved by the forfeiture of their charter, when they abuse their privileges, or refuse to accomplish the conditions on which such privileges were granted; in which case the corporation becomes extinct, by the effect of the violation of the conditions of the act of incorporation. Now, one of the express conditions of the act of incorporation of the Exchange and Banking Company was, that it should never suspend the payment of its obligations in specie, and a violation of that vital condition, in 1837, was, unquestionably, a ground of forfeiture.

In the case of the *Atchafalaya Bank* v. *Dawson*, it was held, that under this disposition of the Civil Code, the effect of the suspension of specie payments was the same on all bank charters, whether or not they contained a clause of forfeiture. The question was then thoroughly examined, and I deem a reference to the opinions delivered in that case sufficient. 13 L. R. 497.

The Exchange and Banking Company was one of the banks that had incurred the forfeiture of their charters, by the suspension of specie payments, and the act of 1839 was intended to apply to it. It is well known, that the exception it made, had exclusive reference to such of the banks as had not suspended specie payments in 1837.

It is next contended, that the act of 1839 never was accepted by the Exchange and Banking Company.

Having shown that the charter of this corporation had been forfeited in 1837, the ground that it did not accept the law, relieving it from the penalty of the forfeiture, can hardly be considered serious, and is evidently taken under a misapprehension of what constituted an acceptance in that case. The law of 1839, is an ordinary act of legislation, making no provision whatever for its express acceptance by the banks, before it could bind them. If it were conceded, therefore, which I am not prepared to do, that the charter is purely a contract between the State and the bank, and that any modification of that contract, by the Legislature, must be accepted by the bank, before it is binding, in this, as in other contracts where no express acceptance is required, it may be implied from the acts of the bank, or from its silence or inaction, if these can, from circumstances, be thus interpreted, or if they raise a legal presumption of assent. C. C. 1805.

In relation to the question of acceptance of a particular charter, by an existing corporation, the acts of the corporate officers are admissible evidence, from which the fact of acceptance may be inferred. It is not indispensable to show a written instrument, or vote of acceptance, on the corporation books. It may be inferred from other facts, which demonstrate that it must have been accepted. *Bank of U. S.* v. *Dandridge*, 12 Wheaton, 71, and cases there cited.

Under the act of 1839, the Exchange and Banking Company continued its operations, as if no forfeiture had taken place.

As long as it continued to pay specie, it made weekly settlements with the other banks, and paid on demand, in specie, the balances due them. It also furnished, and caused to be published, monthly statements of its situation. This was a compliance with all the requisitions of the act of 1839. But the silence and inaction of this corporation, are still more significant than its acts. By a law

amending the original charter, and duly accepted by the bank, the whole amount of the stock was ordered to be called in, within twenty months from its passage, and the result has shown that this provision was absolutely necessary, to sustain the credit of the bank. But, in violation of its duty to the public, it availed itself, to the utmost, of the second section of the act of 1839. The board made no further calls upon the stockholders; and, while under the charter, the whole stock should have been paid up in 1840, fifty dollars per share have remained unpaid to the present day. No clearer case of implied acceptance has ever been made out in a court of justice, and I feel bound to conclude, as we did in the case of *Hepburn and Turpin* v. *The Commissioners of the New Orleans Exchange and Banking Company et als.*, 4 Ann. 87. in which it was admitted that the Exchange and Banking Company had accepted the act of 1839, that the capital of the bank must be limited to the amount paid in on the 1st of February, 1841; and, that the stockholders are not personally bound for debts contracted by the bank, after the promulgation of the act of 1839. The defendant has expressly denied that the present creditors were creditors of the Bank at that time, and as the right of the receiver to recover rested upon proof of that fact, it was incumbent upon him to make that proof. So far from having done so, his witnesses prove the reverse, with respect to all the claims of which they know the origin.

I have examined the case, on the hypothesis that an acceptance of the act of 1839, on the part of the banks, was necessary. But I do not wish to be understood as deciding that point. If charters are contracts, they are contracts which the Legislature may, in certain cases, dissolve. The powers it possesses over charters subsequently granted, by the first paragraph of art. 438, C. C., are not the less real for having been dormant heretofore, and it is a serious question, whether any acceptance of the conditions appended to the remission of the forfeiture, was necessary.

I am of opinion, that the judgment against the defendant must be reversed, and a judgment rendered in his favor.

It is therefore ordered, that the judgment in this case be reversed, and that there be judgment in favor of the defendant, with costs in both courts.

EUSTIS, C. J. My impression is, that the authorities, referred to by Judge Rost, support his opinion, concerning the inference to be drawn from facts showing an acceptance of an amendment, or change of a charter of incorporation; but, as the point was not urged at law, and as I concur with him in his conclusion, that the judgment of the court below ought to be reversed, I prefer placing my assent on the other ground given in support of his opinion, to wit, that the stockholders are not personally bound for debts contracted by the bank, after the promulgation of the act of 1839, and it is not proved that any of the debts represented by the plaintiff, were contracted previous to that time.

SLIDELL, J., dissenting. I am not satisfied that the act of 1839 was accepted by the bank, in such a manner as to bind creditors of the corporation. The report of the committee of the Legislature, which is for the first time brought to our attention, seems to me to show, satisfactorily, that down to the date of that report, there was no acceptance.

Suspension of specie payments may have been a cause of forfeiture, under the charter of this corporation; but the State did not sue for it, until a long time subsequent to the act of 1839. See 13 L. R. 497.

The power granted by the 1st section of the 438th article of the Civil Code, is a power to be exercised under conditions.