building, and we have not found a clear-cut allegation upon the subject.

Jones v. T. & P. R. R. Co., 125 La. 543, 51 South. 582, 136 Am. St. Rep. 339, is cited by plaintiff with confidence. The value of a mule was the cause of action in this cited case. The prescription of one year was pleaded. The mule, it seems, was worthless after it had been wounded. It was held that the time from which prescription ran was the date that the mule died, as previous to that time he had no value. It was a wounded mule which no one would have been willing to own. The death was an event subsequent to the cause of death. It was clearly proven that the mule died from the injury received in an accident. Different from the present case, in which an amount was allowed for damages prior to the injury.

We have given this case our careful attention. In our view of the facts and of the law, we are constrained to hold that there were no continuous torts of such a nature as would justify us in assessing damages.

For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from is affirmed at appellant's costs.

PROVOSTY, J., being absent on account of illness, took no part.

===

(64 South. 703.)

No. 19,725.

COMMERCIAL GERMANIA TRUST & SAVINGS BANK v. JURGENS.

(Nov. 17, 1913. On Rehearing, March 16, 1914.)

*(Syllabus by the Court.)*

1. CORPORATIONS (§ 90*)—ACTION BY RECEIVER—SUFFICIENCY OF EVIDENCE.

The plaintiff as receiver instituted this suit against the defendant, who was president of the Southwestern Lumber Company, to hold him liable personally for the mismanagement of the latter company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 245, 383–419; Dec. Dig. § 90.*]

2. CORPORATIONS (§ 229*) — LIABILITY ON STOCK SUBSCRIPTION — RELEASE — SUBSEQUENT CREDITORS.

Plaintiff claimed $25,000 for 250 shares of capital stock (worth par $100 a share) subscribed for by defendant and not paid.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 876; Dec. Dig. § 229.*]

3. CORPORATIONS (§ 90*)—ACTION BY RECEIVER—SUFFICIENCY OF EVIDENCE.

Plaintiff claimed $8,000 for 80 other shares not paid for.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 245, 383–419; Dec. Dig. § 90.*]

4. CORPORATIONS (§§ 90, 229*)—LIABILITY ON STOCK SUBSCRIPTION — RELEASE — SUBSEQUENT CREDITORS.

(a) As to the first, although defendant had, it was alleged, assumed to pay for these shares, he was released from payment of these shares before the Southwestern Company began operations and before it had incurred debts. Creditors subsequent to the release of a shareholder—a release fairly made—have no right or claim against the released shareholder.

(b) As to the second, defendant paid for 70 shares and remained indebted for 10 shares.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 245, 383–419, 876; Dec. Dig. §§ 90, 229.*]

5. CORPORATIONS (§ 545*)—ACTION BY RECEIVER—SUFFICIENCY OF EVIDENCE.

The charge of undue preference obtained by defendant over the funds applied to his benefit is not sufficiently sustained to justify this court in reversing the judgment.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170–2175; Dec. Dig. § 545.*]

6. CORPORATIONS (§ 545*)—ACTION BY RECEIVER—SUFFICIENCY OF EVIDENCE.

Three notes specially referred to were collected by defendant and the amount paid to creditors of the Southwestern Company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170–2175; Dec. Dig. § 545.*]

7. CORPORATIONS (§ 310*)—INSOLVENCY—ACTION BY RECEIVER—LIABILITY OF OFFICER—MISMANAGEMENT.

The company made an unfortunate sale, for which plaintiff seeks to hold the defendant. The cash part of the price collected went into the treasury of the company. The remainder (uncollected) is not a claim for which the defendant should be held liable.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1352–1362; Dec. Dig. § 310.*]

8. CORPORATIONS (§ 310*)—INSOLVENCY—ACTION BY RECEIVER—LIABILITY OF OFFICER—MISMANAGEMENT.

The same is true of other items. While the management was unfortunate, it does not appear by the evidence that defendant took advantage of creditors to benefit himself personally, although, as is frequently the case in managing corporations with funds too limited, there 'was a deal of scrambling done to meet financial emergencies.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1352–1362; Dec. Dig. § 310.*]

Monroe, J., dissenting on rehearing.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by the Commercial Germania Trust & Savings Bank, receiver, against George J. Jurgens. From judgment for defendant, plaintiff appeals. Amended and affirmed.

Merrick, Lewis, Gensler & Schwarz and Howe, Fenner, Spencer & Cocke, all of New Orleans (Esmond Phelps, of New Orleans, of counsel), for appellant. McCloskey & Benedict and Carroll, Henderson & Carroll, all of New Orleans, for appellee.

BREAUX, C. J. Plaintiff (receiver of the Southwestern Lumber & Exporting Company referred to hereafter for brevity as the "Southwestern Company") sued defendant for a judgment in a sum of $68,994. Plaintiff alleged five different counts in its petition: First. That defendant subscribed to 80 shares of the capital stock, the face value of which was $100, amounting to $8,000, for which he never paid. Second. That he assumed the payment of 250 shares of the capital stock of the Southwestern Company, due by Howard Newcomb, amounting to $25,000. Third. That he obtained undue preference. The Southwestern Company was insolvent. That he, none the less, paid himself from the company's assets. The claim thus collected amounted to $12,481. It is charged that the defendant enriched himself at the expense of the insolvent company to that amount. That he also appropriated three promissory notes on which he collected over $9,000. Fourth. The next item claimed by plaintiff amounts to $10,000, consisting of two drafts drawn by Howard Newcomb, the payment of whose shares the defendant has assumed. Plaintiff in this connection charged that Newcomb was insolvent to the knowledge of Jurgens, the defendant, who was the president of the Southwestern Company; that, for the purpose of concealing and taking undue advantage, he had lumber at Port Arthur, valued at $23,513, belonging to the Southwestern Company', placed in the name of Newcomb, who shipped it to Europe; that these drafts were drawn by Newcomb against the purchaser of the lumber and were handed over to defendant. Plaintiff charges that Newcomb sold lands and other property to the Southwestern Company in payment of his subscription to shares in the company; that the company had accepted this property in lieu of cash, aggregating in value the sum of $25,000; that the company returned this property to Newcomb, and Jurgens, the defendant, in place of Newcomb, became the holder of these shares, amounting to $25,000, as before mentioned.

Defendant sought to meet plaintiff's demand by filing an exception to the capacity of the receiver to prosecute the suit. The exception having been overruled, he filed an answer of general denial and averred that in the conduct of the business of the Southwestern Company he acted in perfect good faith and endeavored by all the means in his power to assist the corporation in the faithful performance of its obligations. Subsequently, defendant filed a supplemental answer, in which he admitted that he had subscribed to $8,000 worth of the capital stock of the Southwestern Company, but averred that he paid for these shares. He, in substance, alleged that he had assumed $25,000 worth of stock subscribed to by Newcomb, but alleged that he had been released by a resolution of

the company and by all the stockholders on January 2, 1906. Prior to the asserted assumption by Mr. Jurgens of the 250 shares of the Newcomb shares of stock, Newcomb, in accordance with agreement, had transferred property to the Southwestern Land Company. Subsequently the company returned his property to Newcomb for the reason that the company did not want other than cash in payment of the shares. It was after the return of this property that Jurgens appears as the asserted purchaser or assignor of the Newcomb shares. These shares were never paid by the company, although they were applied to as shares in commerce. He also admitted that he had applied the proceeds of three notes collected from a debtor of the Southwestern Company to the payment of debts of the company of which he was liable as indorser. He denied that he had any knowledge of the insolvency of the company, that the sum of $2,496.31 was received by him, but averred that it was received by the receiver of the Southwestern Company. In regard to the fourth count, defendant alleged that the Southwestern Company received the sum of $10,000 from Howard Newcomb (this was lumber sold by Southwestern Company to Newcomb, for which the latter only paid a part), but that he never received the amount and is in no manner accountable therefor. He adds that the sale to Newcomb, before alleged, was made in good faith and without suspicion on his part of Newcomb's insolvency. He pleaded the prescription of one year, citing article 1994 of the Civil Code.

During the trial which followed in the district court, plaintiff abandoned all claim to the item of $2,496.31, the cash alleged to have been paid by a debtor of the Southwestern Company to Jurgens and applied to a claim of his own. It also appears that plaintiff abandoned the item of $13,513, the uncollected part of the purchase price of the lumber sold to Newcomb. We will refer to this amount again later.

The exception mentioned above in our recital of the issues presents no question for decision, save that it was properly overruled; nothing further will be stated.

The facts as relates to the first ground urged by plaintiff are that defendant was a subscriber to 80 shares of stock, for which defendant has paid.

The plaintiff in this connection urged that defendant had paid for only 60 shares, and, not having paid for 80 shares, that he was indebted for the difference, to wit, $2,000. It is true that at first the defendant stated that he had paid for 60 shares, but subsequently he explained that he had bought and paid for 80 shares. We will take up this question later.

[2, 4] We take up for decision the second ground stated above, viz., that defendant had bound himself to pay for 250 shares which Howard Newcomb had bought and in payment of which he had delivered property, which was subsequently returned to him by the company, as before stated. We are informed that subsequently the Southwestern Company, not desiring to accept this property in satisfaction of the shares of Newcomb, returned the property to him, and that the defendant Jurgens bound himself to pay $25,000, face value of these shares. The charge of plaintiff is that defendant obtained an unfair preference and did not pay this amount, although bound for its payment.

It is in place to state that the Southwestern Company was incorporated in 1905 with a capital stock of $50,000, represented by 500 shares, par value of $100 each, to be paid cash within 30 days after subscription, and that the corporation was to commence business as soon as its entire stock would be subscribed, and that stockholders were bound

not to sell their shares without first offering them for sale to the company. The original subscribers were George Jurgens, 80 shares; W. Schaffer & Co., per Jurgens, 149 shares; Abraham Baden, per Jurgens, 1 share; Francis Martin, 10 shares; Howard Newcomb, 250 shares; Fred Muller, 10 shares.

This charter was recorded in the office of the Secretary of State in January, 1906.

We are informed that Newcomb, on January 12, 1906, offered his stock to the company, and that on January 12th of the same year Newcomb transferred his subscription to Jurgens, the defendant, and on the same day, at a meeting of the board of directors, the following resolution was adopted:

"The president and secretary are hereby authorized to grant Mr. F. Howard Newcomb a full release from any and all liability resulting from his subscription of two hundred fifty-one shares of the stock, having been assumed by Mr. Jurgens."

The minutes of the meeting were signed by Mr. Jurgens.

The charter having been passed on November 23d, the subscription should have been paid in cash by December 23d. The subscriptions were not paid at time fixed for their payment. On January 12th, the following resolution was passed:

"Resolved that article 3 of the charter would be amended to read as follows: The capital stock of this company is hereby fixed at the sum of fifty-thousand dollars, divided into and represented by five hundred shares of one hundred dollars each. This corporation shall commence business as soon as twenty-five thousand dollars of the stock is subscribed and paid, and that twenty-five thousand dollars of stock shall be held in the treasury to be disposed of to others in the future as the board of directors may decide."

Jurgens, the defendant, pleads in his defense that he did not actually assume the subscriptions made F. E. Howard Newcomb for two hundred fifty shares of the capital stock of the Southwestern Lumber Company, and that he is therefore not liable for the $25,000 claimed by plaintiff. His contention further is that, if he be held to have assumed the $25,000 worth of stock subscribed originally by Newcomb, he has been released from all liability by a resolution passed on January 6, 1906, by all of the stockholders, and that at the time of this release the corporation owed no debts.

There were other resolutions passed which defendant claims also released him from the payment of this amount of $25,000.

[1] In the first place, Jurgens claims: That the stock never was issued; besides, that the company reorganized on such a basis as rendered it impossible for him to own the 250 shares. That the charter of the corporation was amended. The working capital of the corporation was reduced to $25,000 and $25,000 were set aside in its treasury not to be used as capital stock. That it was after this amendment had been made and the stock disposed of as before mentioned that the company commenced active operations and incurred debts. Up to that time it was not indebted at all.

The defendant, Jurgens, could not very well be considered as owning these 250 shares after the organization of the company under the amendment as above stated. He was not considered at all liable for the amount; not mentioned at all as holder of that stock. His name does not appear in the books or in the minutes as a shareholder for this amount.

The plaintiff through his learned counsel, argues that the amendment of the charter had no binding effect because it never was recorded in the office of the Secretary of State.

It is true that it never was recorded, but all of the other formalities were complied with.

The Legislature, after the date of the amendments in question, adopted curative acts that completely cure the want of registry and of the recording of these amendments in the office of the Secretary of State.

Besides, these amendments were passed before a notary, and the law does not set forth any necessity of recording the amendments of a charter, although it is doubtless advisable to record the amendments of the act of incorporation; still the irregularity is cured by the curative acts before mentioned. The complaining creditors were not creditors at the date of the amendment, and therefore have no standing in court.

Heretofore this court has decided that creditors with claims subsequent to the date of the charter do not have good ground to complain of these irregularities.

The article of the Civil Code, 1993, is direct upon that point. Also, the decisions.

See Hepburn v. Commissioners, 4 La. Ann. 87, affirmed in Palfrey v. Pauling, 7 La. Ann. 366. In the latter decision, the court said that a solvent corporation can by a vote of its stockholders cancel stock subscribed but not paid for, and if there was nothing done in bad faith a subsequent creditor was not prejudiced and would not be heard to complain.

In other jurisdictions, similar views have been expressed. Gade v. Perkins, 165 Ill. 367, 46 N. E. 286; In re State Insurance Co. (C. C.) 14 Fed. 28; Cook on Stockholders, § 290, p. 299; Helliwell on Stock & Stockholders, p. 144; 26 Am. & Eng. Ency. of Law, 1011. Also, 10 Cyc. 467; Thompson on Corporations, vol. 1, § 795, bottom of page, and volume 4, § 3676, pars. 103, 104, p. 252.

[3] We cite for decision the question of the 80 shares.

Plaintiff in the next place claims that defendant subscribed to 80 shares of the capital stock of the Southwestern Company, for which he never paid.

We can only say that only 70 shares were paid for.

Defendant, Jurgens, said as a witness that he thought he had subscribed for 60 shares, and subsequently he changed his mind and said that 80 was the number. It remains that he only paid for 70 shares, and that as we read the evidence he still owes 10 shares ($1,000).

Muller, secretary and treasurer, testified that defendant paid his 10 shares for him. The receipt was given by Muller to Jurgens for $8,000, representing subscription of 70 shares; George Jurgens, $7,000 worth; Fred Muller, $1,000. This receipt is signed by Muller, secretary and treasurer.

This agrees with the list of subscribers, and the amount of the respective subscriptions.

The payment of Muller's subscription was made in accordance with an understanding between the secretary and the defendant. It follows that the defendant is indebted on this item in the sum of $1,000. The other items, we understand, are not insisted upon. They are one item of $249.31, cash alleged to have been paid by Schut and Kiehn to Jurgens; and another for $13,513 uncollected amount of lumber sold, it was mentioned, to which we said above we would again refer.

As to this item, we find in plaintiff's brief, relative to the claim, it alleges, during the trial thereof, plaintiff abandoned any claim to the item of $2,496.31, the cash alleged to have been paid by Schut and Kiehn to Jurgens and applied by him in preferring himself. There is no question about this item.

Plaintiff also abandoned its claim for the item of $13,513, uncollected part of the purchase price of the lumber sold to Newcomb. We have noted the admission about the amount. Besides, the evidence does not show that defendant is indebted for this amount.

We have none the less carefully considered the facts connected with this last item and have arrived at the conclusion, before expressed, that plaintiff has no ground of complaint.

[5-8] This company was toward the end, prior to its failure, in a shaky condition

financially. Its papers were not accepted by the banks unless guaranteed by defendant, Jurgens, or Francis Martin, both considered reliable capitalists. Jurgens, the latter, was indorser for outstanding demand notes of the Southwestern Company for large amounts.

The Schut and Kiehn notes before mentioned had been forwarded to this place and received. Jurgens says that for convenience sake he proposed to the Southwestern Company to discount the Schut and Kiehn notes in the Metropolitan Bank and handed the proceeds of the discount to the company. We have no reason to infer that this statement is not true.

There is conflict of testimony as to whether the company was known at the time to be solvent or insolvent. It was doing business and seeking to maintain itself. The management, the evidence shows, was not remarkable. Still, it was not proven that the payments were anticipated. The company sought to relieve itself from its indebtedness. It was the misfortune of the company that it did not have sufficient confidence to obtain loans on its own account. It is unfortunate that corporations limited are frequently obliged to resort to the indorsement of their most solvent members to obtain loans. None the less, the business does not show that the defendant resorted to fraud and that the company acted otherwise than companies will act when creditors are about.

Another item is $23,513, an alleged loss which plaintiff seeks to fasten on the defendant. It is not denied that a considerable part of the amount was not collected. The lumber was sold, and the buyer failed to pay under circumstances which may show carelessness of the company, but not a wrong for which the defendant can be held. Ten thousand dollars of the amount were not illegally appropriated to defendant's personal account. The testimony is that this amount went into the treasury of the company. For that amount also, with the evidence before us, we do not see our way to hold defendant accountable.

In the next place, in another allegation, plaintiff seeks to arraign all of the mismanagement of the company. The charge is not groundless, but it was not made evident that the defendant, who it seems is a successful business man otherwise, is to be held liable. He alone cannot be selected as a carrier of coal.

As relates to the 12 months' prescription pleaded:

We are not of opinion that it is actually necessary in this instance to protect defendant and the corporation.

It does seem that the contract entered into and the liabilities paid over one year prior to the date of suit cannot be successfully questioned, because such payments are irrevocable at the instance of creditors after 12 months have passed from their date without question.

We have followed this record in the different issues. The judge of the district court rejected the demand entirely. We agree with him except as to one item.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is amended by condemning the defendant to pay $1,000 to plaintiff with 5 per cent. interest from judicial demand, and that as amended the judgment is affirmed; appellee to pay the costs of all courts.

### On Rehearing.

LAND, J. In plaintiff's brief on application for a rehearing appears the following statement:

"On January 12, 1906, Newcomb transferred his subscription to the defendant, Jurgens, and, at a meeting of the board of directors on that date, Mr. Jurgens presiding, it was resolved:

" 'That the president and secretary are hereby authorized to grant to Mr. F. E. Howard Newcomb a full release from any and all liability arising out of his subscription to 251 shares of stock, having been assumed by Mr. Jurgens.'

"On the same date there was held a meeting of the stockholders of the corporation at which Mr. Jurgens appeared as the owner of 320 shares, voted the same and signed the minutes.

"At this meeting of stockholders the following resolution was adopted:

" 'Resolved, that article 3 of the charter would be amended to read as follows:

" 'The capital stock of this company is hereby fixed at the sum of fifty thousand dollars, divided into and represented by five hundred shares of one hundred dollars each. This corporation shall commence business as soon as twenty-five thousand dollars of stock is subscribed and paid for, and that twenty-five thousand dollars of stock shall be held in the treasury to be disposed of to others in the future as the board of directors may decide.'

"This resolution was embodied in a notarial act, was recorded in the mortgage office, and was published in the Daily States on the 22d and 29th of January, and on the 5th, 11th, and 21st of February, 1906."

The main contention of the plaintiff is that said amendment of the charter operated a reduction of the capital stock of the corporation, and was not adopted and no certificate of the proceedings was filed in the office of the Secretary of State, as required by the provisions of Act No. 149 of 1898. Section 3 of said act provides that the certificate shall contain, among other things:

"The amount of the capital stock of the corporation at the time said vote was taken and the number of holders thereof, the amount and the number of shares to which it was proposed to and agreed to be increased or decreased, the amount and number of shares whose holders have voted against said change, * * * and the whole amount of the debts and liabilities of said corporation."

This language clearly points to a corporation duly organized and engaged in business. It does not refer to an inchoate corporation in process of formation. In the case before us all the stock subscribers were present at the meeting and voted in favor of the resolution. The proposed amendment of January 12, 1906, did not purport to increase or decrease the capital stock of the corporation. Where all the shares have been subscribed, the reduction contemplated by the statute operates on all the shares, by reducing them proportionally. In the case at bar, as a matter of fact, there was no such reduction made.

Plaintiff alleged in his petition that Newcomb "transferred and assigned to said George Jurgens all of his right, title, and interest in and to the subscription to 250 shares of stock, which assignment was accepted by said Jurgens and said company, and said Jurgens thereby became indebted on account thereof to said company in the sum of $25,000." In other words, plaintiff alleged that Newcomb transferred his stock subscription to Jurgens, who thereupon assumed Newcomb's obligations to the company, and prayed for judgment against Jurgens for $25,000, as the transferee of Newcomb's subscription. The contention that the shares of stock were reduced to the extent of 50 per cent. by the amendment of January 12, 1906, is refuted by the allegations and prayer of plaintiff's petition. As shown by the evidence, Jurgens took over and held this stock, voted it at the stockholders' meeting, and that after the amendment was adopted the same stock was converted into treasury stock. Jurgens was never charged on the books with the Newcomb stock, and the treasury stock was sold in part, by the corporation.

On January 12, 1906, the defendant company was not a going concern, and had not even commenced business, because all of the capital stock had not been paid in cash as required by the original charter.

The amendment of said date provides that the corporation should begin business when $25,000 should be subscribed and paid for, and that the other $25,000 should be held in the treasury to be disposed of in the future as the board of directors might determine. This amendment was advertised and recorded in the mortgage book of the parish of Orleans as required by law, and was read into the original charter. The company had no creditors at the time, and the amendment

gave notice to future creditors that the capital stock consisted of $25,000, subscribed and paid in, and $25,000 of treasury stock.

As, outside of the Newcomb stock, $36,000 of stock was paid in, to hold Jurgens for $25,000 would raise the total capital stock to $61,000, or $11,000 over the authorized capital. This is a legal impossibility. By consent of all the shareholders, one of them may sell or transfer his shares as in case of other property, or withdraw from the contract. See 2 Thompson, §§ 1515, 1516.

We conclude that the plaintiff, who contracted with the corporation, after the amendment was duly recorded and advertised, has no just reason to complain of the transaction in question. To condemn the defendant, on the evidence before us, it seems to us, would be against equity and good conscience.

It is therefore ordered that our former decree herein be reinstated and made the judgment of the court.

MONROE, J., dissents.