## In re State Ins. Co.

### (Circuit Court, N. D. Illinois. June 14, 1882.)

**BANKRUPTCY—LIABILITY OF STOCKHOLDERS—ASSETS.**

> On January 12, 1871, a corporation, by adoption of a by-law, reduced to $500,-000 its original stock of $10,000,000, on which 24 per cent. had been paid in by stockholders, canceled the outstanding certificates of stock, and issued full-paid certificates for 20 per cent. of the canceled certificates. Afterwards the company became insolvent, and the stockholders were resorted to in order to pay its creditors. *Held*, that the stockholders, on the twelfth of January, 1871, in case the assets of the company were not sufficient to pay its debts, were liable for all claims on contracts *at that date* in force, but were not liable on *subsequent* contracts, and as to subsequent contracts the creditors could only look to other assets of the company; but that if the subsequent creditors of the company could not be paid in full out of the general assets, the stockholders must pay in full all claims on contracts existing January 12, 1871, and refund to the assignee any amount realized from the assets and by him applied in payment of such contracts; and as the assignee had paid 40 per cent. on these contracts out of the assets of the company, the stockholders must restore this amount to the general fund.

*J. Van Arman* and *F. J. Smith*, for petitioner.

*B. D. Magruder* and *Goudy & Chandler*, for defendant.

DRUMMOND, C. J. Since an opinion was given upon this case, some further arguments have been presented by both sides, and the case

has been further considered. The controversy is in relation to an order made by the district court on July 8, 1880, which declared that every person who was a holder of unpaid or partially-paid stock, in the company on the twelfth day of January, 1871, was liable for the amount then remaining unpaid upon such shares of stock, in such sum as was necessary to pay the debts of the company which had accrued, or might thereafter accrue, upon all policies of insurance issued by the company prior to that day; and an order making an assessment of 12½ per cent.; and an order declaring that those stockholders who, within 60 days, should pay to the assignee $10 per share of the stock, were entitled to receive a receipt in full of all their assessments, and be forever discharged from all liability. On the twelfth day of January, 1871, at an annual meeting of the stockholders of the company, a resolution was unanimously passed by which the capital stock of the company was reduced to $500,000, it having been originally fixed at $10,000,000, upon which there had been 24 per cent. paid; 20 per cent. originally, and 4 per cent. having been added as an assessment levied to make good the impairment of the capital stock. The resolution of the twelfth of January, 1871, adopted as a by-law, declared that the outstanding certificate of stock should be canceled, and full-paid certificates for 20 per cent. of the canceled certificates issued.

The company became insolvent, and it was necessary to resort to the stockholders in order to pay the creditors of the company. The district court held, and in that opinion this court concurred, that the reduction of the stock did not relieve those who were stockholders at the time from their liability on the contracts then existing against the company, but that the stockholders to whom the full-paid stock was issued were not liable individually on contracts made after January 12, 1871.

The main controversy in the case grows out of the fact that the assignee has paid to the various creditors about 40 per cent. of the claims which have been proved, including the claims on contracts existing at the time the stock was reduced. No part of this 40 per cent., however, came from the stockholders whose stock had been reduced, and to whom full-paid stock had been issued, but from other assets of the company. It would seem upon principle that in the case of the insolvency of a company like this, that all its assets and all liability of the stockholders for the payment of the debts ought to be used for that purpose. In other words, that all obligations ought to be met and discharged in order to pay the debts of the com-

pany. The company was then in this position: The stockholders, on the twelfth of January, 1871, in case the assets of the company were not sufficient to pay its debts, were liable for all claims on contracts at that time in force. They were not liable on subsequent contracts. For these latter, therefore, the creditors could only look to other assets of the company. As at the time the assignee distributed the 40 per cent. to the creditors it could not be known to what extent a call would have to be made on the stockholders, it would seem that it was proper to make the distribution generally to all the creditors, but it must be regarded as a conditional distribution, subject to correction upon the collection of all the assets of the company, and upon the payment of all liabilities of the stockholders. But now it is ascertained that the stockholders must be called upon to meet an existing deficiency, and we have to take the case, therefore, upon the basis that a portion of the claims arising on contracts in force on the twelfth of January, 1871, have been paid with other assets of the company.

It is urged that the stockholders stand in the position of sureties to pay the debts of the company. It is, perhaps, not material what term we apply to them. Whatever is legally due from them constitutes a fund for the payment of the debts of the company. Their liability is undoubtedly secondary, namely, on default of the assets of the company not being sufficient to liquidate the claims against it. If the stockholders, on the twelfth of January, 1871, are relieved in part from their liability because some of the debts against them have been paid by other assets of the company, then they are to that extent discharged from their legal obligations, which, we have seen, were to the full extent of all debts accruing upon contracts at that time in force; that is, they would be in part released from the claims against them because the assignee, from the general assets of the company, has paid 40 per cent. to the creditors. In case the subsequent creditors of the company cannot be fully paid out of the general assets, the question is whether the stockholders can thus be partially released from their obligations, and whether, on the contrary, they should not be compelled to pay all that was due; and if their creditors have received anything from other assets of the company, that amount should not be restored to the general fund from payments to be made by the stockholders of the twelfth of January, 1871. It seems to me that, in such a case, they must discharge all their obligations,—they must pay the amount in full to meet their claims on contracts existing at that time, and, of course, including an

amount sufficient to restore to the general fund what has been taken from it; and therefore, I think, there should be an order of the district court made requiring the stockholders to pay enough to meet all liabilities on contracts existing on the twelfth of January, 1871.

The 12½ per cent. assessed by the district court was ordered on reports made by the register, to whom various questions connected with this branch of the case were referred. He stated that the liability against the company on the twelfth of January, 1871, on claims proved, was the sum of $164,502.38, which he said had been reduced by the payment of the 40 per cent., as already stated. The 40 per cent. paid on these claims amounted to $50,379.36; and it appears by his report, and by the admission of the petitioners in an amendment which they have filed to their petition, that a portion of the original debt has been expunged, thus reducing the amount due. In view of the various circumstances which have occurred since the order was entered by the district court, it may be a question whether this court should direct the district court to make an assessment on the stockholders for any definite amount, or simply to instruct it to make an assessment sufficient to pay all the liability existing on the part of the stockholders for the debts due on the contract in force January 12, 1871, without crediting upon those debts the 40 per cent. that has been paid by the assignee. The order of the district court will, therefore, necessarily have to be changed, as it appears to have been made upon the assumption that the $50,379.36 was to be deducted from the amount specially due by the stockholders.

It is, perhaps, only fair to state that the question which has been discussed in this court and now decided, does not seem to have been presented to the district court at the time the order was made which is now the subject of review.

Subsequently the district court was directed to make an assessment of 25 per cent.; it appearing that amount would be necessary to meet the deficiency.