HENRY GADE *et al.*

*v.*

THE FOREST GLEN BRICK AND TILE COMPANY *et al.*

165    367.
102a  ¹292

*Filed at Ottawa November 9, 1896—Rehearing denied March 6, 1897.*

1. CORPORATIONS—*capital stock may be reduced before recording final certificate.* Where the organization of a corporation is complete aside from recording the final certificate of organization, the capital stock may be reduced in conformity to the statute and the organization completed with the reduced capital.

2. SAME—*creditors of corporation cannot complain that surplus stock was not canceled pro rata.* That the cancellation of surplus stock in a corporation was not made *pro rata* is a question which concerns the stockholders only, and does not affect the validity of the reduction as against parties becoming creditors after notice thereof.

3. SAME—*parties becoming creditors after notice of reduction of capital stock are confined to reduced capital.* Parties who do not become creditors of a corporation until after notice of a reduction in its capital stock cannot collect their debts out of subscriptions to the capital stock canceled in the reduction, nor does the fact that the parties are stockholders themselves give them any additional rights as creditors.

*Forest Glen Brick and Tile Co.* v. *Gade,* 55 Ill. App. 181, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

H. S. MECARTNEY, for appellants.

ADELBERT HAMILTON, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The issues in this case arose upon a bill filed by appellant Henry Gade and a cross-bill of appellant Charles Harms. The objects of the suit were to have a receiver appointed for the appellee the Forest Glen Brick and Tile Company, a corporation, to marshal its assets, deter-

mine priorities of creditors, to enforce alleged liabilities of stockholders for unpaid stock, to dissolve the corporation and to wind up its affairs. The alleged liabilities for unpaid stock were based on the charge that the capital stock was $100,000, while it was claimed in defense that such capital stock had been reduced to $30,000. The circuit court adopted the view that the stock had not been reduced, but on appeal to the Appellate Court the decree was reversed and the cause remanded with directions. (*Forest Glen Brick and Tile Co.* v. *Gade*, 55 Ill. App. 181.) The Appellate Court having decided that the stock had been lawfully reduced, and the complainants in the bill and cross-bill having refused to amend their pleadings accordingly, the circuit court dismissed said bills. The decree of dismissal was affirmed by the Appellate Court.

The only question presented to this court is, whether the attempted decrease of the capital stock was effectual. One of the reasons alleged for asserting that it was not is, that at the time of the action for that purpose the corporation had not been completely organized. Everything had been done except to record the final certificate. A statement of the persons proposing to form the corporation was filed February 5, 1884, in the office of the Secretary of State, who issued a license to them as commissioners. The capital stock proposed was $100,000, and it was subscribed and all the steps taken so that a report was made, and on June 26, 1884, the Secretary of State issued a certificate of the complete organization of the corporation. It was necessary to record this certificate in the office of the recorder of Cook county to make the organization complete. (*Loverin* v. *McLaughlin*, 161 Ill. 417.) The stock of $100,000 had been subscribed in the expectation that other persons would take part of it; but the subscribers failed to find such persons and therefore concluded to reduce the stock. The proceedings for decrease took place, and the certificate of complete organization was not filed for record until the day that

the certificate of decrease was so filed. The proceeding to reduce the stock was completed two days later by filing the certificate in the office of the Secretary of State. When the proceedings were had the corporation was in being for all purposes incident to the completion of its organization. It had passed every stage except the recording of the certificate that its organization was complete. The amount of its capital stock had been fixed so that it could only be decreased by the method adopted. We see no valid reason why the organization might not be completed with the reduced capital stock, and think that it had such an existence as enabled its officers and stockholders to make the reduction.

Appellants did not become creditors until after the reduction was accomplished and the certificate recorded, and notice duly published, as required by law, that the stock had been reduced. The corporation was then acting on the basis of a capital stock of $30,000, with due notice of that fact. No case has been cited and no principle invoked by which such creditors having notice of the reduction can collect their debts out of subscriptions to the capital stock canceled by the corporation in the reduction before their rights accrued. Appellants are stockholders, but are only seeking to enforce alleged rights as creditors, and the fact of their being stockholders gives them no additional right as creditors. Nevertheless they claim the right, as creditors, to question the regularity of the proceedings in the reduction. Without saying that they have such a right we are of the opinion that the objections are unfounded.

One objection is, that notice was not delivered or sent to each stockholder as required by statute. Most of the stockholders were present at the meeting, and, so far as they are concerned, it is not material whether they were notified, or how it was done, since the object of notice was fully accomplished. The newspaper notice was published as provided by statute, and the president of

the corporation made his sworn certificate, filed in the office of the Secretary of State, that notice was given to each stockholder, and showing a full compliance with the law in giving the same. There was also testimony that notices were sent to the stockholders. There is nothing against this evidence except a want of recollection as to some stockholders, and this should not prevail after such a lapse of time.

It is also objected that the requisite two-thirds of stock did not vote for the reduction. The record of the meeting kept by the secretary showed that the votes cast for reduction were two hundred and fifty shares against none, and it was declared carried. This is relied upon to show that there was less than a two-thirds vote for the proposition. The sworn certificate of the president above referred to stated that at least two-thirds of all the votes represented by the whole stock of the corporation voted for the resolution, and it was shown that more than two-thirds of the whole stock was voted for the proposition. The entry in the record was explained by proof that the secretary took the number of shares as reduced to $30,000, and credited as voting for the resolution the ratio of the shares as so reduced. We see no objection to the manner of computing the shares being so explained. The managers of this corporation were inexperienced in business of that character. The records of meetings showed sometimes individual votes instead of votes by shares, and failed to distinguish between meetings of stockholders and directors, and at a stockholders' meeting showed an election of directors by acclamation. Ignorance of proper methods was plainly apparent, but the parties acting in good faith should not suffer on that account if the truth can be determined.

The surplus stock was not canceled *pro rata* and a new basis established among the stockholders by that method, and this is urged as invalidating the proceedings. This, however, is a question among stockholders as to their

rights to stock, but does not affect the reduction.   No stockholder is here complaining of the apportionment of the reduced stock.   The object was to get rid of surplus stock, and if a subscriber still wanted the same number of shares as before he got them, and where stock was not paid for and not wanted, the number was reduced or left off.   Changes were made in the subscription book by erasures and writing new numbers, with the sanction of the parties interested.   Whether such a course could have been adopted against the consent of part of the stockholders is not now in question.   It was regarded as just by the owners of the stock among themselves, and the question does not concern creditors.   Whether the reduction should be spread equally over all the shares and each be allowed to purchase his proportion is not in issue.

The judgment of the Appellate Court will be affirmed:

*Judgment affirmed.*