THOMPSON et al. v. FIRST STATE BANK
      OF AMARILLO.    (No. 1045.)*

(Court of Civil Appeals of Texas.    Amarillo. Oct. 18, 1916.    On Motion for Additional Findings of Fact, Oct. 25, 1916.    Rehearing Denied Nov. 8, 1916.)

1. BANKS AND BANKING ⟂39 — CAPITAL STOCK—PAYMENT—CONSTITUTIONAL PROVISIONS.

A note given in payment for the capital stock of a bank in contravention of Const. art. 12, § 6, prohibiting the issuance of stock in a corporation, except for money paid, labor done, or property actually received, is void as between the parties.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 44–48; Dec. Dig. ⟂39.]

2. CORPORATIONS ⟂544(2)—CAPITAL STOCK— TRUST FUND DOCTRINE.

The capital stock of a corporation, especially its unpaid subscriptions, is a trust fund for the benefit of its general creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2162; Dec. Dig. ⟂544(2).]

3. CORPORATIONS ⟂80(10)—SUBSCRIPTION TO CAPITAL STOCK—INSOLVENCY—TRUST FUND DOCTRINE.

In view of the doctrine whereby subscriptions to the capital stock of a corporation become a trust fund for the benefit of its general creditors, the corporation's insolvency is a bar

to a rescission of a subscription contract for fraud.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 262; Dec. Dig. ☞80(10).]

**4. COURTS ☞90(1)—RULES OF DECISION.**

Because a court adopts a rule established by line of decisions upon a given question, it does not necessarily follow that it must carry such rule to its logical results where the parties occupy different relations to the subject and to each other.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313–315; Dec. Dig. ☞90(1).]

**5. BANKS AND BANKING ☞39 — SUBSCRIPTION NOTE—VALIDITY—ESTOPPEL.**

A subscriber to the capital stock of a banking corporation payable by note, in contravention of Const. art. 12, § 6, prohibiting the issuance of stock in a corporation except for money paid, labor done, or money actually received, which note had been negotiated so as to give the corporation a credit, after its insolvency, and in view of the trust fund doctrine, was estopped to assert the invalidity of the note.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 44–48; Dec. Dig. ☞39.]

**6. BANKS AND BANKING ☞39 — CAPITAL STOCK—PAYMENT BY NOTE—ISSUANCE.**

Under Const. art. 12, § 6, prohibiting the issuance of stock in a corporation except for money paid, labor done, or property actually received, a banking corporation has no right to issue or tender its stock until the subscriber's note is paid.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 44–48; Dec. Dig. ☞39.]

*On Motion for Additional Findings of Fact.*

**7. BANKS AND BANKING ☞39 — SUBSCRIPTION NOTE—ACTION—EVIDENCE.**

In an action by state officers in the name of a banking corporation to recover upon subscription note to it, evidence *held* to show that the liability of the parties on the note on the ground that it was given in violation of the Constitution, was not raised until the bank had failed and suit was brought.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 44–48; Dec. Dig. ☞39.]

Error from District Court, Potter County; Hugh L. Umphres, Judge.

Action in the name of the First State Bank of Amarillo in liquidation, instigated by state officers, against E. O. Thompson and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Crudgington & Works, of Amarillo, for plaintiffs in error. Turner & Rollins, of Amarillo, for defendant in error.

HENDRICKS, J. Plaintiff in error E. O. Thompson executed to the First State Bank of Amarillo, on September 22, 1913, a promissory note for $1,000, bearing 10 per cent. interest from maturity, and providing for the usual 10 per cent. attorney's fees. The consideration for the execution and delivery of the note was the contemplated issuance and delivery of certain stock in said banking institution, and at the time of the execution of the note E. O. Thompson was a minor and L. O. Thompson, his father, signed said note as a surety. Thereafter the First State Bank of Amarillo became in-

solvent, and its affairs were taken in charge by the Commissioner of Insurance and Banking of the state of Texas, and J. O. Roots as special agent, under the authority of the commissioner of banking, assumed the active charge of the liquidation of said bank, for the benefit, primarily of the creditors of said institution, and secondarily, for the stockholders. In the proceeding involving the process of liquidation this suit was instituted at the instigation of the state officers, using the name of the bank as party plaintiff, for the purpose of collecting the proceeds of said note.

Considerably prior to the insolvency of said institution, E. O. Thompson, the principal in said note, attained his majority, but the question of his minority as a defense to his liability on the paper is neither pleaded nor urged in this record.

During the time of his minority E. O. Thompson received and retained a certain dividend on the stock of said bank, aggregating about 8 per cent., and we infer from the record that no question was ever raised in regard to the liability of either of the defendants until after the bank had failed and this particular suit was instituted.

The plaintiffs in error Thompson allege:

"That no stock nor certificate of stock was delivered or tendered to them or either of them in plaintiff's bank as a consideration for such original note or any of the renewals thereof until after said plaintiff bank had become insolvent and such stock and all certificates thereof had become worthless."

L. O. Thompson testified that he saw the original certificate of stock issued in Ernest's name (the son) after the bank failed and some time after it was in the hands of the receiver.

The officers of the First State Bank discounted said note with the Guaranty Bank & Trust Company of Dallas, which credited the latter bank with the proceeds of said note on July 8, 1910, and the same note was nominally paid by said First State Bank August 19, 1910, one month and eleven days after its negotiation to the Dallas bank. The note matured on its face January 1, 1914; the First State Bank becoming insolvent April 2, 1914, the plaintiff in error E. O. Thompson attaining his majority in March, 1913.

The plaintiffs in error, defendants in the court below, confessed the cause of action, except in so far as it may be avoided by their special answer.

[1-3] The trial court, at the close of the testimony, peremptorily instructed the jury against the plaintiff in error, and, presenting the question in many phases in this record, it is essentially contended that the note is absolutely void because in contravention of the provisions of the Constitution prohibiting the issuance of stock in a corporation except for money paid, labor done, or property actually received. Const. art. 12, § 6.

This court held, in the case of McWhirter v. First State Bank of Amarillo, 182 S. W. 684, where the facts, to a considerable extent, were similar to the record here, that McWhirter, who executed a note, in consideration of the issuance and delivery of stock in the same bank, was estopped to deny his liability upon said note, after the assets of the bank had been taken in charge by the officers of the state government, for the purpose of realizing upon said assets for the benefit of the creditors and stockholders of that institution. In that case, as here, the note had been negotiated to the Dallas bank, and a short time thereafter returned to the First State Bank, without any real consideration having been passed between the Dallas and the Amarillo banks.

After the return by the Dallas bank to the Amarillo bank of the note in that case, as well as in this, the note was renewed by the original makers, but in the McWhirter Case the jury found, upon the submission of an issue to them, that the renewal note in reality constituted a loan between the parties; equivalent to finding that said renewal note was not the representative of the first note executed, and hence was not given for the original stock contracted for by the maker. In the McWhirter Case, though probably not as clearly and explicitly shown as it should have been, we proceeded upon the theory that if the renewal note was not a loan, but in reality by substitution continued to represent the former note, and hence the consideration for the stock, the insolvency of the bank, with its affairs in the hands of the government, precluded the contention under the Constitution that the note was void.

Plaintiffs in error urge with persistency and considerable force in their brief, and in a written argument, that if such a note is void ab initio, as having been inhibited by the Constitution, it is void for all purposes, and that the change in the condition of the affairs of the bank cannot have the talismanic effect of vitalizing the note.

The doctrine that the capital stock of a corporation is a trust fund for the payment of its debts—particularly so after its insolvency—contributed, as an element, to the conclusion declared in the McWhirter Case. This doctrine was established in the United States Circuit Court as early as 1824. Judge Story, in the course of an opinion, said:

"It appears to me very clear upon general principles, as well as the legislative intention, that the capital stock of banks is to be deemed a pledge or trust fund for the payment of the debts contracted by the bank. The public, as well as the Legislature, have always supposed this to be a fund appropriated for such purpose." Wood v. Dummer, 3 Mason (U. S.) 308, Fed. Cas. No. 17.944: Thompson on Corporations, vol. 4 (2d Ed.) § 3416.

In 1873, nearly three years before our present Constitution was ratified, the Supreme Court of the United States said of this rule:

"Though it be a doctrine of modern date, we think it now well established that the capital stock of a corporation, especially its unpaid subscriptions, is a trust fund for the benefit of the general creditors of the corporation." Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 731.

The Supreme Court of this state, in the case of Hdwe. Co. v. Mfg. Co., 86 Tex. 161, 24 S. W. 22, 22 L. R. A. 802, by Chief Justice Stayton, follows the well-settled rule and quotes from Sawyer v. Hoag, supra, this language:

"The debt which the appellant owed for his stock was a trust fund devoted to the payment of all of the creditors of the company. As soon as the company became insolvent, and this fact became known to the appellant, the right of set-off for an ordinary debt to its full amount ceased. It became a fund belonging equally, in equity, to all the creditors, and could not be appropriated by the debtor to the exclusive payment of his own claim."

Chief Justice Stayton also quotes from Appleton v. Turnbull, 84 Me. 72, 24 Atl. 592, to this effect:

"Unpaid stock is as much a part of the assets of a corporation as the money that has been paid in upon it. * * * During the existence of the life of the corporation it is a trust to be managed for the benefit of the stockholders; but in the event of its dissolution, or insolvency, it becomes a trust fund for the benefit of its creditors."

It has been the settled doctrine of the courts that corporate insolvency, as bearing upon the right of a subscriber to rescind his contract for fraud, is a bar to such rescission. Cook on Corporations, vol. 1, p. 164; Scott v. Deweese, 181 U. S. 215, 21 Sup. Ct. 585, 45 L. Ed. 828, 829. This position is also well illustrated by the case of Burleson v. Davis, 141 S. W. 561 (writ of error denied by the Supreme Court).

It is true that our courts have adopted the theory that the prohibitive language in the Constitution of this state, with reference to the issuance of stock, except for money paid, labor done, or property actually received, restricts the same as between the parties, and does not proceed upon the theory that it is wholly between the government and the corporation.

[4] This court, as best it could, has followed the logic of that theory, giving effect to what we considered were reasonable conclusions, based upon such a premise. However, as Chief Justice Brown said, in the case of Chase v. Swayne, 88 Tex. 223, 30 S. W. 1051, 53 Am. St. Rep. 742:

"It does not necessarily follow * * * that. because a court adopts a rule established by a line of decisions upon a given question, that it must therefore carry that rule to its logical results by applying it to all cases upon the same character of contracts, where the parties occupy different relations to the subject and to each other."

In that cause cases are considered where such logical result is not extended.

[5] In the case the trust fund doctrine prevailed when the Constitution of this state was enacted as to its prohibitive features in regard to the issuance of stock. In the McWhirter Case, and the present case, the-

subscribers' notes are negotiated to another bank with a credit obtained in the transferee bank, and the note after organization of the new bank is immediately reacquired by it as an asset, and then renewed with the original maker. If a bank were permitted to obtain a credit by a showing of deposits to the extent of its capital stock presented to the proper banking authorities of this state for the purpose of organization, and all the notes of the stockholders were those so used as representing the entire capital stock, and said stockholders were then permitted, after insolvency, to invoke the Constitution as prohibiting the execution and delivery of such notes, evidently there would be no capital stock for the benefit of creditors. The insolvency and the changed status of the bank and the changed relationship of the parties create the interposition of a new principle; not but what the notes are void between the original parties, but that the original maker is estopped to so assert it. Depositors of a bank have the right to assume that an institution of that character has complied with the law of this state and acquired a fund as a means of indemnification to it, arguing it as a general proposition and eliminating the guaranty feature as an element. The stock books of the corporation, ordinarily would show such a subscriber as a full-fledged stockholder. To then permit him to say that he was not a stockholder, when the insolvency of the bank creates the rights of creditors as one of paramount consideration, to this court is unconscionable. The receiver represents the creditors as well as the corporation. Lyons v. Benney, 230 Pa. 117, 79 Atl. 251, 34 L. R. A. (N. S.) 105.

We think the McWhirter Case was properly decided upon the main principle enunciated therein, and hence at this time, notwithstanding the vigor of appellants' argument, and seeming logic in inferentially combating it, we cannot do otherwise that reaffirm the principle.

[6] The pleading of the plaintiffs in error, in effect that the stock was neither delivered nor tendered to either of them as a consideration for the original note, or any of the renewals thereof, until after the bank had become insolvent, supported by the testimony of L. O. Thompson, that he never saw the original certificate of stock until after the bank had failed—as an available plea in defense—rather sustains the liability, and the judgment. The corporation had no right to issue or tender the stock until the note was paid, and the position asserted in the pleading would probably be controlled by the following authorities: Commonwealth Bonding & Casualty Ins. Co. v. Hill, 184 S. W. 247; Cope v. Pitzer, 166 S. W. 447; Bank v. Falvey, 175 S. W. 833; Horn v. Baker, 173 S. W. 474; Davis v. Burns, 173 S. W. 476; Cattlemen's Trust Co. v. Turner, 182 S. W.

438; Cattlemen's Trust Co. v. Pruett, 184 S. W. 716.

The judgment of the lower court is affirmed.

## On Motion for Additional Findings of Fact.

Complaint is made as to some of the findings in the original opinion, in that one finding is incomplete and others either erroneous or partially erroneous.

[7] It was said in the opinion:

"We infer from the record that no question was ever raised in regard to the liability of either of the defendants until after the bank had failed, and this particular suit was instituted."

Plaintiff in error calls the court's attention to certain pleadings and offered evidence—

"to the effect that E. O. Thompson was only an accommodation subscriber for stock, and that he was never regarded as a stockholder, neither was he or his father, L. O. Thompson, considered liable on the original note or any of the renewals thereof, except as accommodation signers."

Our statement is correct as to the only issue raised in this court. The nine assignments in plaintiff in error's brief, including the assignment on fundamental error, only present, in different phases, the question of their liability, on account of the note having been given for stock in violation of the Constitution.

The first assignment says:

"The court erred in peremptorily instructing the jury to find against the defendants the amount of the note sued upon, which, as the evidence shows without conflict, was executed in renewal, and as the evidence of the same indebtedness represented by note of date July 1, 1910, * * * which said original note was given and received in full satisfaction and payment for $1,000 of the capital stock in plaintiff bank," etc.

We are not concerned in reality with any question in this record whether E. O. Thompson was an accommodation subscriber or whether L. O. Thompson, the alleged accommodation indorser, was liable as principal or as an accommodation signer. The question of the liability of either of these parties upon this note, on the ground that the note was given in violation of the Constitution, was not raised until the bank had failed and the suit had been filed. Abstractly speaking (inappropriate, however, to the record and brief as presented in this court), plaintiffs in error are correct as to the position assumed in their pleading, and some testimony offered for the purpose of sustaining the pleading. It was stated in the opinion that E. O. Thompson received and retained a certain dividend on the stock. Complaint is made that the "record shows without question that this very dividend was paid as interest on the note." E. O. Thompson testified that he received this particular dividend, spent the

money, and personally never tendered it back. He did further testify that his father tendered it back for him, but the tender was in this manner: "He took it and paid the interest on this particular note with it."

Paragraph 3 of plaintiff in error's motion, we do not construe to be a request for any finding. Our attention is merely called to their bill of exception No. 3 as to certain matters that were sought to be proven in regard to the delivery of a certificate of stock. There is no assignment predicated on this bill of exception.

Paragraph 4 complains of the incompleteness of our finding "relative to the discount of the original note given by plaintiffs in error to the First State Bank by the Guaranty Bank & Trust Company." It is said in the motion it was "definitely shown that plaintiffs in error arranged no loan with the First State Bank about the time of the original note or soon thereafter; neither did they in any wise become indebted to the First State Bank, as shown by testimony of both of plaintiffs in error." We did not find that plaintiffs in error arranged any loan. Our finding relative to the discount by the First State Bank was a part of the history of the case, and we regarded the question of the redelivery by the Guaranty Bank & Trust Company of the note to the First State Bank as in reality placing said paper in the same position as having been given for the contemplated issuance and delivery of stock in said State Bank.

The latter part of paragraph 4 says our finding is incomplete (relative to the discount of the original note), for the reason that there was testimony sought to be introduced by plaintiffs in error, "to the effect that all renewals of this original note were had under the original agreement which was to the effect that E. O. Thompson should in fact not become a stockholder in the bank, but that his name should only be used as an accommodation, and without any real obligation ever resting on either of the plaintiffs in error in regard to said stock or any of said notes." The question was not before us, as often stated, with reference to the matter of accommodation. Aside from the proposition of liability raising the constitutional prohibition, with reference to the issuance of stock, the liability of a party who executes his notes solely for the purpose of permitting a corporation to organize and obtain a charter, permitting insolvency to ensue and creditors' rights to accrue, could probably be easily solved. However, no such question is presented and not necessary to decide, nor a finding of fact relative thereto made.

With the explanations mentioned herein, the motion for additional findings of fact is overruled.