## DUDLEY K. WOODWARD JR. v. E. C. SONNESYN AND OTHERS.[1]

April 3, 1925.

No. 24,090.

**Rights of Texas receiver who sues here subordinate to those of Minnesota creditors.**

1. A receiver appointed by a Texas court to wind up the affairs of a dissolved Texas corporation is permitted to sue in the courts of this state as a matter of comity. His rights, however, are subordinate to those of local creditors.

**Rights and duties of stockholders fixed by laws where company is incorporated.**

2. The rights and obligations of stockholders in a corporation are determined by the laws of the jurisdiction creating the corporation.

**Texas law as to issue of stock.**

3. The laws of Texas forbid the issuance of stock for less than its par value in money or its equivalent, and require all stock to be subscribed and one-half thereof to be paid in before the charter is issued.

[1]Reported in 203 N. W. 221.

**Purchaser of stock liable to subsequent creditors for par value of stock; otherwise as to company.**

4. Under the laws of Texas a purchaser cannot relieve himself from liability to subsequent creditors for the full par value of his stock by any contract with the corporation, but the corporation is estopped from collecting more than he contracted to pay.

**When subsequent creditors may recover on bonus stock.**

5. Subsequent creditors are presumed to be entitled to recover on bonus stock, but the presumption may be overcome by showing that they knew the facts.

**Receiver representative of creditors.**

6. The receiver represents creditors and may enforce their rights.

**Allowance of claims and fees by Texas court not questioned in Minnesota action.**

7. The validity of claims and fees allowed by the Texas court cannot be questioned in this action.

**Duty of court in winding-up proceeding.**

8. It is the province of the court winding up a corporation to determine the respective rights and obligations of all parties, and to collect available funds and distribute them to the parties entitled thereto.

**When holders of bonus stock may defeat recovery by receiver.**

9. Holders of bonus stock cannot defeat recovery thereon by a receiver, unless it appears that there are no claims for which they are liable.

**False representations of seller of stock no defense against receiver.**

10. False representations inducing the purchase of stock are not available as a defense against the receiver of an insolvent corporation.

**Finding sustained.**

11. The finding that defendants were subscribers for the stock is sustained by the evidence.

**Holders of bonus stock which is canceled not liable to subsequent creditors.**

12. Holders of bonus stock which was surrendered and canceled are not liable to subsequent creditors.

**Trustees of unsold stock not personally liable.**

13. Holders as trustees for the corporation of unsold stock are not personally liable thereon.

*Headnote 1. See Corporations, 14 C. J. p. 1339, § 4046 (1926 Anno).

Headnote 2. See Corporations, 14 C. J. p. 991, § 1536.

Headnote 3. See Corporations, 14 C. J. p. 154, § 155; p. 156, § 156; p. 443, § 605.

Headnote 4. See Corporations, 14 C. J. p. 450, § 610; p. 952, § 1480.

Headnote 5. See Corporations, 14 C. J. p. 1126, § 1773 (1926 Anno).

Headnote 6. See Corporations, 14a C. J. pp. 990, 991, § 3232.

Headnote 7. See Judgment, 34 C. J. p. 1135, § 1611.

Headnote 8. See Corporations, 14a C. J. p. 1088, § 3679.

Headnote 9. See Corporations, 14a C. J. p. 1188, § 3874.

Headnote 10. See Corporations, 14a C. J. p. 1190, § 3875 (1926 Anno).

Action in the district court for Hennepin county. The case was tried before Bardwell, J., who ordered judgment in favor of the receiver. Defendants appealed from an order denying their motion for a new trial. Plaintiff appealed from an order denying his motion for a new trial. Affirmed on both appeals.

*Grimes & Maxwell,* for plaintiff.

*H. E. Fryberger* and *Olof L. Bruce,* for defendants.

TAYLOR, C.

The receiver appointed in proceedings, brought by the state of Texas in the courts of that state, to dissolve and wind up the affairs of the Northern Oil and Gas Company, a corporation of that state, brought this action in the courts of this state to recover the unpaid portion of the par value of the capital stock issued by the corporation to the defendants, residents of this state.

The court found, in substance, that the Northern Oil and Gas Company was organized as a corporation under the laws of the state of Texas, on May 8, 1917, with a capital stock of $200,000 divided into shares of the par value of $100 each; that the laws of Texas forbàde the issuance of such stock for less than its par value, and required all thereof to be subscribed for, and one-half the amount thereof to be paid in, at or before the issuance of its

charter; that the organizers of the company represented, and its charter set forth, that all its capital stock had been subscribed and paid in at the time the company was organized; that in fact only a small portion of its capital stock had been subscribed for or paid in at that time; that in January, 1921, the attorney general of the state of Texas brought an action in the proper court of that state to forfeit the charter of the company for failure to comply with the laws of Texas and for fraud in organizing the company; that in that action the charter of the company was duly forfeited and annulled, and the corporation dissolved; that in January, 1921, the plaintiff, Dudley K. Woodward Jr., was duly appointed receiver of the corporation and of all its property and assets with authority to collect all claims due to the corporation, whether for stock subscriptions, for unpaid stock, or otherwise, and to prosecute any and all suits necessary for that purpose; that Woodward duly qualified as such receiver and ever since has been and still is acting as such; that on May 22, 1917, the corporation issued to each of the defendants except Thomas and Elise Tonneson 60 shares of its capital stock for which each of such defendants except Theodore Tennyson paid the sum of. $2,000 and no more; that Tennyson paid $1,000 for the 60 shares issued to him and no more; that 50 shares were issued to Thomas Tonneson and ten shares to Elise Tonneson for which they paid $2,000 and no more; that all of the stock issued and paid for as above stated was a part of the original issue of the stock of the corporation; that in October, 1917, each of the defendants surrendered to the corporation for cancelation one-third of the stock issued to him as above set forth; that under the constitution and laws of the state of Texas the defendants are indebted and liable to the corporation and its creditors for the unpaid part of the par value of the stock issued to them, as above set forth, and not returned for cancelation; that certain specified claims against the corporation have been filed and allowed by the Texas court; that the other claims exist, the time for filing which has not expired; that only assets of the corporation are the claims against the stockholders thereof for unpaid subscriptions upon the

capital stock; and that the Texas court had duly authorized the receiver to bring and prosecute the present suit.

As conclusions of law the court found that the receiver was entitled to judgment against each of the defendants for the unpaid amount of the par value of the capital stock issued to him and not surrendered, and directed that judgment be entered accordingly.

Defendants made a motion for amended findings or for a new trial. Plaintiff also made a motion for amended findings or for a new trial of certain issues. Both motions were denied and both parties appealed. We will first consider the questions raised on defendants' appeal.

## DEFENDANTS' APPEAL.

Defendants contend that the receiver appointed by the Texas court cannot maintain this action in the courts of this state; that he can bring suit only in the courts of Texas. It is true that a receiver cannot bring suit in the courts of another state as a matter of right unless vested with title to the property or assets which he seeks to recover. Herf & Frerichs Chem. Co. v. Brewster, 54 Tex. Civ. App. 217, 117 S. W. 880, apparently holds that in Texas the receiver of an insolvent corporation is vested with title to its property. In the present case the corporation was dissolved at the instance of the state of Texas and is insolvent, and plaintiff as receiver is charged with the duty of winding up its affairs. The title to its property may have vested in him under the Texas law; but we have no occasion to decide that question, for this state permits a foreign receiver to sue in its courts as a matter of comity, taking care to protect the rights of its own citizens by holding that the rights of a foreign receiver are subordinate to those of local creditors. Comstock v. Frederickson, 51 Minn. 350, 53 N. W. 713; Stevens v. Tilden, 122 Minn. 250, 142 N. W. 315; Goldman v. Christy, 155 Minn. 91, 192 N. W. 360. Most of the state courts permit such suits. 23 R. C. L. 141-144; and numerous authorities cited in note found in 5 Ann. Cas. 570, and Ann. Cas. 1913D, 1296. The Federal decisions cited by defendants do not control the state courts in this respect.

The corporation having been created and organized under and pursuant to the laws of Texas, the rights and obligations of its stockholders are fixed and determined by the laws of that state. First Nat. Bank v. Gustin M. C. M. Co. 42 Minn. 327, 44 N. W. 198, 6 L. R. A. 676, 18 Am. St. 510; Axford v. Western Syndicate Inv. Co. 141 Minn. 412, 168 N. W. 97, 170 N. W. 587; 7 R. C. L. 354.

The stock in question was issued as fully paid up and nonassessable, and defendants contend that they are not liable for the unpaid part of its par value. For convenience the excess of the par value above the price for which stock is issued will be referred to as bonus stock to distinguish it from the unpaid part of the subscription or purchase price.

The Texas Constitution provides:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received." Art. 12, § 6.

The Texas statute provides:

"The stockholders of all private corporations created for profit with an authorized capital stock under the provisions of this chapter, shall be required, in good faith, to subscribe the full amount of its authorized capital stock, and to pay fifty per cent thereof before said corporation shall be chartered." Art. 1125, Tex. St. 1914.

We understand the Texas courts to hold that the capital stock of a corporation, including any unpaid part of the par value thereof, is a trust fund for the payment of its liabilities; that the capital stock cannot be lawfully issued for less than its par value in money or its equivalent; that the corporation while a going concern may collect unpaid subscriptions, but is estopped from collecting the bonus part of stock which it has assumed to issue as fully paid up; that, when a corporation goes into the hands of a receiver, it is his duty to collect unpaid subscriptions and also the bonus part of stock issued for less than par or for property taken at an overvaluation, if needed to pay liabilities; and that in a suit by a credi-

tor, or by a receiver for the benefit of creditors, stockholders will not be heard to assert any contract or arrangement with the corporation purporting to relieve them from liability for any part of the par value of stock issued to them, unless it appears that the creditors gave the credit before the issuance of the stock or had full knowledge of all the facts at the time they gave the credit. Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015; Herf & Frerichs Chem. Co. v. Brewster, 54 Tex. Civ. App. 217, 117 S. W. 880; Thompson v. First State Bank (Tex. Civ. App.) 189 S. W. 116; Mason v. First Nat. Bank (Tex. Civ. App.) 156 S. W. 366; Nenney & Pardue v. Waddill, 6 Tex. Civ. App. 244, 25 S. W. 308; Cole v. Adams, 19 Tex. Civ. App. 507, 49 S. W. 1052; Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320; O'Bear-Nester Glass Co. v. Antiexplo Co. 101 Tex. 431, 108 S. W. 967, 109 S. W. 931, 16 L. R. A. (N. S.) 520, 130 Am. St. 865; Showalter v. Laredo Imp. Co. 83 Tex. 162, 18 S. W. 491.

While the trust fund doctrine has not been adopted in this state, stockholders who have received bonus stock are held liable for the debts of the corporation to substantially the same extent as under the laws of Texas. First Nat. Bank v. Gustin M. C. M. Co. 42 Minn. 327, 44 N. W. 198, 6 L. R. A. 676, 18 Am. St. 510; Hospes v. N. W. M. & C. Co. 48 Minn. 174, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. 637; Hastings Malt. Co. v. Iron Range Brew. Co. 65 Minn. 28, 67 N. W. 652; Downer v. Union Land Co. 113 Minn. 410, 129 N. W. 777; Randall Printing Co. v. Sanitas M. W. Co. 120 Minn. 268, 139 N. W. 606, 13 L. R. A. (N. S.) 706; Mackall v. Pocock, 136 Minn. 8, 161 N. W. 228, L. R. A. 1917C, 390; State Bank v. Kenney B. I. Co. 143 Minn. 236, 173 N. W. 560.

Defendants invoke the rule, applied in Texas as well as in this state, that creditors who gave credit knowing the facts concerning the issuance of bonus stock cannot recover from the holders of such stock, and insist that there are no creditors who are entitled to recover from the holders of the stock here in question. Parties dealing with a corporation have the right to assume that its outstanding stock has been paid for at par; and, if bonus stock has in fact been issued, are presumed to have the right to compel pay-

ment therefor to the extent necessary to satisfy their claims. If they had knowledge that bonus stock had been issued, that is a matter of defense to be proven by the holders of such stock. Hospes v. N. W. Mnfg. & Car Co. 48 Minn. 174, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. 637; Dwinnell v. Minneapolis F. & M. M. Ins. Co. 97 Minn. 340, 106 N. W. 312; Randall P. Co. v. Sanitas N. W. Co. 120 Minn. 268, 139 N. W. 606, 43 L. R. A. (N. S.) 706; Mackall v. Pocock, 136 Minn. 8, 161 N. W. 228, L. R. A. 1917C, 390.

The allowance of claims by the Texas court in the winding up proceedings conclusively establishes such claims as valid liabilities of the corporation and the stockholders are bound thereby. Holland v. Duluth I. M. & D. Co. 65 Minn. 324, 68 N. W. 50, 60 Am. St. 480; Hanson v. Davison, 73 Minn. 454, 76 N. W. 254; Swing v. Humbird, 94 Minn. 1, 101 N. W. 938; Swing v. Red River Lbr. Co. 105 Minn. 336, 117 N. W. 442; Phelps v. Consolidated V. & E. Co. 157 Minn. 209, 195 N. W. 923; Straw & E. M. Co. v. L. D. Kilbourne B. & L. Co. 80 Minn. 125, 83 N. W. 36; Swing v. Barnard-Cope Mnfg. Co. 115 Minn. 47, 131 N. W. 855; Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015. The validity of the claims allowed cannot be questioned in the present action.

Under the Texas laws, as we understand them, the receiver does not merely represent the corporation but also represents the creditors and is charged with the duty of enforcing all claims which the creditors or any of them could enforce. The assets of the corporation including the amounts collected from unpaid subscriptions are to be distributed to all its creditors. The amounts collected from bonus stock are to be distributed only to those entitled thereto. That is, to subsequent creditors not shown to have had knowledge of the facts at the time they gave the credit; and, if there be a surplus after satisfying such claims, such surplus is to be distributed to the stockholders who paid the corporation full price for their stock without knowledge of the issuance of the bonus stock, to the extent necessary to place them on an equality with those who received the bonus stock. For the Texas courts, as well as this court, hold that obtaining stock for less than par operates

as a fraud upon all those dealing with the corporation thereafter without knowledge of that fact.

The court which is winding up the corporation is the only court which can determine all the questions involved. It is the province of that court to pass upon and adjust all claims against the corporation; to collect the assets of the corporation including unpaid subscriptions for capital stock; to determine whether there are claims for which the holders of bonus stock are liable; to determine the extent of such liability and enforce payment thereof if found to exist; to determine the respective rights and liabilities of the various parties between themselves; and to distribute the funds obtained to those entitled thereto including the stockholders if there be a surplus for distribution to them.

Defendants are presumed to be liable, to the extent of their bonus stock, for all subsequent claims allowed against the corporation in the absence of affirmative proof of facts exempting them from such liability. If claims are allowed for which they are not liable, they should show that fact in the original proceeding, and the court in which that is pending will undoubtedly give them all the relief to which they are justly entitled. They cannot defeat the present action on that ground except by showing that there are no claims for which they are liable. This they have not done. The record shows that the Texas court had allowed the claim of the state for its franchise tax, the judgment of K. B. Birkeland for $13,192.87, and claims for receiver's fees, attorneys' fees and expenses aggregating several thousand dollars, and also that other claims exist against the corporation, the time for filing which has not expired. Defendants insist that Birkeland became a creditor of the corporation with full knowledge of all the facts and that they are not liable for the amount of his claim for that reason. They made a motion in the trial court for a finding to the effect that Birkeland had knowledge of the issuance of the bonus stock at the time he became a creditor and the court refused to so find. This was equivalent to a holding that the fact asserted had not been established; and the evidence will not justify us in disturbing that holding, even if it were material in this case. Defendants also insist that the

fees allowed are excessive. The allowance of fees in the winding up proceeding is within the exclusive control of the Texas court. It is not reviewable here.

Defendants urge that they were induced to take this stock by false representations made by officers or representatives of the company. Such representations may give a cause of action against those who made them, but are no defense to this action. Thompson v. First State Bank (Tex. Civ. App.) 189 S. W. 116; National Bank v. Texas Invest. Co. 74 Tex. 421, 12 S. W. 101; Clark v. Wilder, 157 Minn. 449, 196 N. W. 563; Provan v. Bondeson, 157 Minn. 478, 196 N. W. 659.

Defendants insist that they were bona fide purchasers of the stock, and not original subscribers for it. The court found, in substance, that they were in fact original subscribers for the stock issued to them, and the evidence amply supports such finding.

Defendants contend that the court erred in receiving in evidence certain of the Texas statutes not specifically pleaded in the complaint. The complaint sets forth the substance of the laws on which the claim is founded without setting forth the several statutes in haec verba. We think that the Texas law was sufficiently pleaded and that these statutes were properly admitted as evidence tending to support the cause of action asserted in the complaint. Moe v. Shaffer, 150 Minn. 114, 184 N. W. 785, 18 A. L. R. 1194; Thomson-Houston Elec. Co. v. Palmer, 52 Minn. 174, 53 N. W. 1137, 38 Am. St. 536.

Defendants claim this action is an attempt to enforce the penal statutes of the state of Texas and cannot be maintained for that reason. This claim is without merit. The statutes in question impose obligations of a contractual nature, and are not considered as penal statutes either here or in Texas. Their further claims that all holders of bonus stock within this jurisdiction should have been made defendants and that they were entitled to call Birkeland for cross-examination under the statute are also without merit.

### PLAINTIFF'S APPEAL.

Plaintiff insists, if we understand his position correctly, that the original stockholders of the corporation became liable to the corpora-

tion as well as to its creditors for the full par value of bonus stock issued to them. We think the Texas decisions fail to bear out this contention. The Texas laws forbid the issuance of stock for less than its par value. But where a corporation in fact issued stock as fully paid up for less than its par value, it was held that the corporation was estopped by its contract from collecting any more than the purchasers had agreed to pay. See cases previously cited.

Plaintiff contends in his appeal that defendants are liable for that part of their bonus stock which they surrendered to the corporation for cancelation in October, 1917. This stock was surrendered pursuant to an agreement, apparently assented to by all the stockholders, that it should be turned into the treasury to be resold. The court found that this stock had been surrendered for cancelation and that defendants were liable on that part of their bonus stock not so surrendered, but did not expressly find that the surrendered stock had been canceled by the corporation. Plaintiff made a motion to amend the findings to the effect that the corporation had never in fact accepted the surrender or canceled the stock. The court refused to make such a finding. We think the action of the court, taken as a whole, should be deemed equivalent to a finding that the stock had been canceled; and the evidence is sufficient to justify such a finding, although the corporate records fail to show any formal action by the corporation.

Plaintiff contends that this stock having been issued to defendants they remain liable for its par value notwithstanding the fact that it was surrendered and canceled. This would doubtless be true as to creditors whose claims accrued prior to the cancelation; but all the claims asserted in this proceeding accrued a considerable time after the cancelation. Subsequent creditors are not entitled to recover on canceled stock unless at the time they gave the credit they knew that the stock had been issued and were justified in believing that it was still outstanding. In re State Ins. Co. 14 Fed. 28, 11 Biss. (U. S.) 301; Lellyet v. Brooks (Tenn. Ch. App.) 62 S. W. 596; Gade v. Forest Glen Brick Co. 165 Ill. 367, 46 N. E. 286; Hill v. Silvey, 81 Ga. 500, 8 S. E. 808, 3 L. R. A. 150; Thomas v. Went-

worth Hotel Co. 16 Cal. App. 403, 117 Pac. 1041, 1046; Lebens v. Nelson, 148 Minn. 240, 181 N. W. 350.

At the time of issuing the stock to the original subscribers therefor in May, 1917, the corporation issued a quantity of stock to E. C. Sonnesyn, its treasurer, as trustee, and another quantity to C. D. Morck, its president, as trustee. A part of this stock was subsequently sold to actual purchasers and the proceeds from such sales were turned into the treasury. Plaintiff made a motion to amend the findings by charging Sonnesyn and Morck with the par value of the stock issued to them as trustees less the amounts received from subsequent purchasers. The court denied this motion and plaintiff urges the ruling as error. We cannot so hold.

At the organization of the corporation it took over or purchased certain leaseholds and other property from another corporation at a price of something over $30,000, of which only a small part was paid in cash at the time. On the strength of this transaction, the organizers purported to issue the entire capital stock of the corporation as fully paid up. This was the basis of the claim that defendants were bona fide purchasers of their stock mentioned in a preceding paragraph. The shares actually subscribed for were transferred or issued to the several subscribers. The shares issued to the president and treasurer, as trustees, were plainly intended to be held and used for the benefit of the corporation for the same purposes and in the same manner that treasury stock is usually held and used. They had not purchased this stock and did not hold it for any one who had purchased it. They held it as trustees for the corporation or its stockholders. The facts justified the court in concluding that in truth it belonged to the corporation until sold to actual purchasers, and in holding that the trustees were not personally liable upon it, for the reason that they were merely the agencies through which the corporation handled it.

Perhaps another matter should be mentioned. Defendant Morck had removed from the state before this action was begun and was not served. The answer interposed was on behalf of all the defendants. In the course of the trial the attorney for the defendants stated that he had no authority to represent or appear for Morck

and that including him in the answer was an inadvertence, but made no request to amend or correct the answer or expunge the appearance. At the argument in this court he called attention to the statement made in the trial court and again announced that he had no authority to appear for or represent Morck. A person against whom a judgment is entered upon the unauthorized appearance of an attorney has the undoubted right to be relieved therefrom on making proper application therefor, or to recover from the attorney any damages he may have sustained. 2 R. C. L. 984. Mr. Morck, however, has not repudiated the appearance nor asked to be relieved from the effect of it. As the record stands, the matter is not before this court for action.

The orders of the trial court are affirmed on both appeals.

On July 17, 1925, the following opinion was filed:

PER CURIAM.

To the order denying the petition for a reargument of the above entitled case, the following statement is added by the court, viz:

That the petition is denied upon the ground, among others, that the decision violates no rights secured to the appellants by the Fourteenth Amendment to the Constitution of the United States which question was actually entertained and considered on the petition for reargument.